IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 23-cr-00193 |
| Plaintiff, | |
| v. | **UNITED STATES' POSITION REGARDING SENTENCING** |
| TERRY JON MARTIN, | |
| Defendant. | |

## I.   INTRODUCTION

The United States of America, by Mac Schneider, United States Attorney for the District of North Dakota, and Matthew D. Greenley, Assistant United States Attorney, acting under authority conferred by 28 U.S.C. § 515, hereby submits the United States' Position Regarding Sentencing in the above-captioned case.  Pursuant to the jointly submitted plea agreement, the United States recommends a sentence of time served based upon Martin's serious infirmity.  There appear to be no objections to the Presentence Investigation Report (Doc. 31), no issues in dispute for the Court to resolve, and therefore an evidentiary hearing is unnecessary.

On October 13, 2023, Martin plead guilty to the sole count of the Indictment, Theft of Major Artwork, in violation of 18 U.S.C. § 668.  Sentencing is scheduled for January 29, 2024.

## II.   FACTUAL BACKGROUND

The PSIR presented the facts of the case very well.  In brief summary, one pair of ruby slippers from the movie *The Wizard of Oz* were stolen from the Judy Garland Museum in Grand Rapids, Minnesota, during the overnight hours of August 27 to August

28, 2005.  (PSIR at ¶¶ 7-9)  The ruby slippers were one of only four pairs known to exist and at the time they were insured for $1,000,000.  Id. at ¶ 8.  The insurance company settled with the insured and became the owner of the missing ruby slippers.

No investigative leads developed for many years until an individual contacted the Grand Rapids Police Department about facilitating a return of the ruby slippers for reward money, which had been advertised as $200,000.  Id. at ¶¶ 9-10.  Ultimately, individuals connected to the stolen ruby slippers attempted to obtain more money for the ruby slippers than offered by the insurance company, and threatened to continue to conceal the ruby slippers for another ten years or "explore other options."  Id. at ¶ 10.  The FBI opened a case in 2017 to investigate the extortion and other crimes.  Id.  The FBI successfully recovered the ruby slippers in a sting operation on July 10, 2018, less than one year after opening the case.  Id. at ¶ 11.

During follow up investigation, call records connected Martin to individuals suspected to be involved in the possession of stolen goods and extortion.  PSIR at ¶¶ 12-13.  Martin was a long-term resident of Grand Rapids and had a lengthy criminal history that included burglary and trafficking of stolen items.  Id. at ¶ 13.  Agents executed a search warrant at Martin's home based on immigration-related violations that were not tied to the ruby slippers.  Id. at ¶ 13.  During the search, Martin was asked about the ruby slippers, and he initially denied participating in the theft.  However, Martin later agreed to be interviewed by the FBI, and he stated that he was solely responsible for stealing the ruby slippers.  Id. at ¶ 14.

Martin provided details of the theft that corroborated the information known to law enforcement. PSIR at ¶ 16. For example, Martin knew that the museum alarm did not function, a fact which had also been discovered in the investigation. Further, Martin stated that he used a sledge to break both a window in a rear door to the museum as well as the display case containing the ruby slippers. Both the window and the plexiglass case were shattered, but no other damage was noted in the investigation.

Martin knew prior to the theft that the ruby slippers had been insured for $1,000,000. PSIR at ¶ 15. He told the FBI that he reasoned the "rubies" in the ruby slippers must have been real gem stones to justify the high insured value. Id. When he later discovered the gem stones were glass, Martin gave them to a fence to dispose of them. Id.

### III. DISCUSSION

The Court must fashion a sentence that is "sufficient, but not greater than necessary." 18 U.S.C. § 3553(a). Section 3553(a) lists a number of factors that must be considered in sentencing, including the "nature and circumstances of the offense"; "the need for the sentence imposed to reflect the seriousness of the offense . . . afford adequate deterrence . . protect the public . . . and provide the defendant with needed" care training or treatment; "the history and characteristics of the defendant"; "the kinds of sentences available"; the U.S. Sentencing Guidelines; "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct;" and "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(1)-(7).

## A. Advisory U.S. Sentencing Guidelines Range

The parties agree that Martin's base offense level is 8, as calculated in the PSIR. PSIR at ¶ 23. There is a 14-point enhancement based on the value of the ruby slippers at the time of the theft. Id. at ¶ 24. A two-point enhancement applies because the offense was committed for pecuniary gain. Id. at ¶ 25. After taking into account Martin's acceptance for responsibility, the Plea Agreement and the PSIR agree that the adjusted offense level is 21. PSIR at ¶ 33; (Doc. 26 at 7).

The Plea Agreement anticipated a criminal history category of V, though the more rigorous analysis in the PSIR revealed a criminal history category of VI, resulting in a guideline imprisonment range of 77-96 months. PSIR at ¶¶ 52, 95.

## B. Departure Grounds

Part of the disparity between the criminal history category contemplated by the Plea Agreement and that calculated in the PSIR arises from the treatment of nine criminal history points Martin received from related criminal conduct that was charged three different cases in 1986. PSIR at ¶ 111. As noted in the PSIR, if the Court considers "only 3 total criminal history points for these cases, given the conduct in each arose out of a single criminal episode, the resulting criminal history category for consideration would be IV [.]" Id. Further, given Martin's age, his health concerns, and the lack of any known criminal conduct since 2005, Martin's criminal history score is not "particularly predictive now" of his likelihood to commit other crimes. PSIR at ¶ 111. Accordingly, application of criminal history category IV is warranted. Id. Using criminal

4

history category IV, and an offense level 21, Martin's USSG range is 57-71 months. See PSIR at ¶ 111 (recommending a downward departure).

Furthermore, the PSIR notes that Martin suffers from chronic obstructive pulmonary disorder. PSIR ¶ 77. Martin is on oxygen at all times, including at his change of plea hearing. Just prior to the change of plea, Martin elected to receive hospice services, and a medical determination was made that Martin's illness is terminal, and his life expectancy is less than six months. Id. Martin takes many medications, which cause him numerous side effects. In short, Martin is homebound by his COPD. The parties agree, and the PSIR concurs, that Martin is seriously infirm to a degree that justifies a departure. PSIR at ¶ 112. Given that Martin is already immobilized, the United States recommends no detention or house arrest be imposed.

    C. **Section 3553(a) Factors**

        1. **Nature, Circumstances and Seriousness of the Offense**

The offense is a serious one. As far as thefts go, Martin's violation was disgraceful. Afterall, Martin targeted and stole rare and valuable pieces of Americana with the intent to destroy them and liquidate them for their gemstones. Once Martin realized his error, he transferred the ruby slippers to a fence, presumably recognizing the difficulty of selling well-known artwork. It is reasonable to believe that Martin could foresee that it may take years to sell the ruby slippers, or even that they would be concealed indefinitely. A younger Martin placed the ruby slippers in jeopardy of being hidden for years while statutes of limitation ticked by.

The owner, MS, suffered loss of pride of ownership and enjoyment of displaying the ruby slippers. In addition to the gravity of the loss, MS lost an important source of income. This pair of ruby slippers, the "travelling pair," gave their owner a modest living while allowing the public to enjoy this iconic piece of memorabilia. PSIR at ¶ 19.

A time-served sentence simply does not reflect the seriousness of the crime, but as noted below, Martin's health limits the reasonableness of incarceration.

### 2. History and Characteristics of the Defendant

Up to and including the ruby slippers theft, Martin had an extensive criminal history involving robbery, theft, possessing and selling stolen property, and burglary. PSIR at ¶¶ 40, 42, 43, 44, 45, 46, 48, 49. Since 2005 Martin appears to have no known violations.

Today, Martin is a 76 year old with a long history of COPD. He requires oxygen, numerable medications, regular care, and he is homebound for practical purposes. Martin is prescribed powerful pain medication. PSIR at ¶ 117. At times Martin is confused, and he takes medication for delirium. PSIR at ¶ 79.

The parties agree that the joint sentencing recommendation is driven by Martin's condition more than any other sentencing factor. All the other factors at least arguably would support a sentence of incarceration if not a high-end guidelines sentence.

### 3. Deterrence, Avoiding Sentence Disparities, and Just Punishment

Had Martin been healthy, a term of incarceration may have provided just punishment even at his age. This is especially true in art crimes cases where thieves conceal art for years or decades to evade investigations and statutes of limitation.

However, in this case the United States' position is limited to the facts of this case, wherein this defendant is gravely ill and expected to live less than six months. Incarceration would not further any sentencing goals at this time in this case.

### 4. Restitution

The United States has notified all known victims of their rights under the Crime Victims' Rights Act including the right to full and timely restitution. No restitution requests have been received, however the PSIR includes a victim impact statement from a representative of MS. PSIR at ¶ 19.

### IV. CONCLUSION

While the advisory guidelines in this case would ordinarily provide a sufficient sentence to reflect the seriousness of the offense and Martin's lengthy criminal history, deter others, and provide just punishment, the Defendant's health is simply too fragile for the United States to recommend anything other than a time-served sentence.

Dated: January 4, 2024

>	MAC SCHNEIDER
> United States Attorney
>
> By:   /s/ *Matthew D. Greenley*
> MATTHEW D. GREENLEY
> Assistant United States Attorney
> Acting Under Authority Conferred by
>    28 U.S.C. § 515
> MN Bar ID 034252X
> 655 First Avenue North, Suite 250
> Fargo, ND  58102-4932
> (701) 297-7400
> matthew.greenley@usdoj.gov
> Attorney for United States